UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND


THE GERFFERT COMPANY, INC.,      :
                    Plaintiff,   :
                                 :
          v.                     :      CA 10-101 S
                                 :
WILLIAM J. HIRTEN COMPANY, LLC,  :
JAMES DEAN, and ABC COMPANIES,   :
                    Defendants.  :


## REPORT AND RECOMMENDATION

David L. Martin, United States Magistrate Judge

     Before the Court is the Motion for Summary Judgment of
William J. Hirten Co., LLC and James Dean and Request for Oral
Argument (Docket ("Dkt.") #18) ("Motion for Summary Judgment" or
"Motion").  The Motion has been referred to me for preliminary
review, findings, and recommended disposition pursuant to 28
U.S.C. § 636(b)(1)(B).  For the reasons stated below, I recommend
that the Motion be granted.

## I.  Facts

### A.  Gerffert, Panigel, Bonella, and Dean

     Plaintiff The Gerffert Company, Inc. ("Plaintiff" or
"Gerffert"), was a distributor for products made by Fratelli
Bonella, s.r.l. ("Bonella"), an Italian religious art company.[1]
Corrected Local Rule 56(a) Statement of Undisputed Facts of

---

[1] Plaintiff notes that it has been Bonella's "sole and exclusive
distributor in the United States" since the 1950's.  Local Rule 56
Statement of Disputed Facts (Dkt. #32) ("Plaintiff's SDF") ¶ 1.

William J. Hirten Co. LLC and James Dean (Dkt. #28) ("Defendants'
Corr. SUF") ¶ 1.  In January 2005, Stephen Panigel ("Panigel"),
the president of Gerffert, hired Defendant James Dean ("Dean"),
to work at Gerffert as an employee.  Id. ¶ 2.  Prior to this,
Dean had worked an as independent sales representative for
Gerffert for seventeen years.  Id.

Dean owned and operated HMH Religious Manufacturing Co.,
Inc. ("HMH"), a company which makes and sells religious jewelry,
and he continued to operate HMH after being hired as a Gerffert
employee.  Id. ¶ 3.  Panigel and Dean had agreed when Dean was
hired that "Dean would put in whatever time he needed to at HMH
...," Local Rule 56 Statement of Disputed Facts ("Plaintiff's
SDF") ¶ 3, and that this resulted in Dean working three days a
week for Gerffert and two days a week for HMH, see Defendants'
Corr. SUF ¶ 3; Memorandum and Order Granting in Part Motion to
Deem Defendants' Statement of Undisputed Facts Admitted (Dkt.
#53) ("M&O Re Defendants' SUF") at 9 (deeming Defendants' Corr.
SUF ¶ 3 admitted); see also Reply Declaration of Stephen Panigel
in Further Support of Motion for Preliminary Injunction and in
Opposition to Cross-Motion for Summary Judgment (Dkt. #30-1)
("Panigel Reply Decl.") ¶ 37 ("By the time Dean left Gerffert in
2007 there were many weeks when he only showed up at Gerffert
Tuesday, Wednesday, and Thursday.  I allowed him to do it ....").
During the time that Dean worked at Gerffert, Mike Tally

("Tally"), an employee of Gerffert, and Dean lived at Panigel's
New York residence, and the three often had dinner together.
Defendants' Corr. SUF ¶ 4.

**B.  The Discussions and Agreements**

Early in 2004, Andrea Bonella ("Andrea") and Panigel
discussed broadening Gerffert's range of products.  Id. ¶ 5;
Plaintiff's SDF ¶ 5.[2]  In the spring of 2004, Panigel informed
Andrea that the best way to widen Bonella's product range and
increase sales was to merge with another religious company that
would complement Gerffert's line.  Defendants' Corr. SUF ¶ 6.
Panigel informed Andrea that William J. Hirten, Inc. ("Hirten New
York" or "Old Hirten"), was the best prospect and that he was
negotiating to merge Gerffert with this company.  Id.  On
February 4, 2005, Gerffert, HMH, and Hirten New York signed a
non-binding letter of intent.  Id. ¶ 7.  The non-binding letter
declared the desire of the three companies to form a single
entity that would be a full-service manufacturer and supplier of
religious articles and merchandise.  Id.

From February 4, 2005, through May 2007, Gerffert was

_____

[2] Andrea Bonella ("Andrea") and Stephen Panigel ("Panigel")
disagree as to whose idea it was to increase Gerffert's product range.
Andrea states that early in 2004 he "advised Steve Panigel ... that
Bonella wanted Gerffert to increase its range of products."  Local
Rule 56(a) Statement of Undisputed Facts of William J. Hirten Co. LLC
and James Dean (Dkt. #20) ("Defendants' SUF"), Exhibit ("Ex.") 1
(Declaration of Andrea Bonella ("Andrea Decl.") ¶ 2.  Panigel
maintains that "[t]he idea of broadening Gerffert's product offering
was from Gerffert and Mr. Panigel ...."  Plaintiff's SDF ¶ 5.  This
disagreement does not affect resolution of the instant Motion.

manufacturing and purchasing merchandise specifically to expand and renovate the Hirten New York product line. Defendants' Corr. SUF ¶ 8; M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 8 admitted). Gerffert also ordered products from Bonella to be sold by Hirten New York. Id. In November 2005, Gerffert expressed its intention to buy Hirten New York rather than merging the three companies so that Panigel would have "all the control." Defendants' Corr. SUF ¶ 9; see also M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 9 admitted). Panigel stated that he intended to create a new company called "The Gerffert-Hirten Co." Defendants' Corr. SUF ¶ 9; see also M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 9 admitted).

As of April 2007, Gerffert still had not purchased Hirten New York and Dolores King, the president of Hirten New York, terminated negotiations. Defendants' Corr. SUF ¶ 10; M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 10 admitted). After King decided not to sell Hirten New York to Gerffert, Dean, Panigel, and Andrea met to discuss how to proceed with the transaction. Defendants' Corr. SUF ¶ 11; M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶ 11 admitted). Andrea advised that Bonella wanted to continue publishing books with Hirten New York because it could not afford to lose the investment it had made over the last three years.

Id.  At the close of the meeting, Dean, Panigel, and Andrea
agreed on a new arrangement under the terms of which a new
company, Hirten LLC ("Hirten LLC" or "New Hirten"), would be
created to purchase the assets of Hirten New York.  Defendants'
Corr. SUF ¶ 12; M&O Re Defendants' SUF at 10 (deeming Defendants'
Corr. SUF ¶ 12 admitted).  HMH, Gerffert, and a new company
created by Bonella called Betaquattro would each have a one-third
ownership.  Id.

     The next day Dean, Panigel, and Andrea presented this
proposal to King, who agreed to it on the condition that the
closing take place by the end of 2007.  Defendants' Corr. SUF ¶
13; M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶
13 admitted).  The arrangement also contemplated that products
Gerffert had acquired for Hirten New York would be purchased by
Hirten LLC.  Defendants' Corr. SUF ¶ 14; M&O Re Defendants' SUF
at 10 (deeming Defendants' Corr. SUF ¶ 14 admitted).  In a May 9,
2007, email, Andrea memorialized the agreement between Bonella,
HMH, and Gerffert to create Hirten LLC.  Defendants' Corr. SUF ¶
15; M&O Re Defendants' SUF at 10 (deeming Defendants' Corr. SUF ¶
15 admitted).

     On May 22, 2007, Andrea traveled to New York for a meeting
with Panigel and Dean in order to finalize the details of forming
Hirten LLC.  Defendants' Corr. SUF ¶ 16; M&O Re Defendants' SUF
at 11 (deeming Defendants' Corr. SUF ¶ 16 admitted).  At this

meeting, Panigel stated that he was not satisfied with having only one-third ownership of the new company and announced his intention to retire and rent out his building. Defendants' Corr. SUF ¶ 17; M&O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 17 admitted). Panigel told Andrea and Dean that Bonella's only option would be to buy Gerffert, otherwise he would have to liquidate Gerffert. Id.

Andrea was directed by the Bonella board to reject Panigel's proposal. Defendants' Corr. SUF ¶ 18; M&O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 18 admitted). Shortly after the meeting, Andrea and Dean met with King and reached an agreement in principle that the deal would go forward with King becoming a one-third owner instead of Gerffert. Id. In late May 2007, Andrea and Dean told Panigel of the terms of this agreement in principle. Defendants' Corr. SUF ¶ 19; M&O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 19 admitted).

### C. The Retirement Email

On May 25, 2007, Panigel emailed Bonella that he was retiring from Gerffert. Defendants' Corr. SUF ¶ 20; M&O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 20 admitted). In his email, Panigel again suggested that Bonella buy Gerffert or he would be forced to liquidate Gerffert. Id. Panigel emphasized that he had invested over four million dollars in constructing a second floor on his building for Hirten New

6

York and in acquiring merchandise for Hirten.  Id.  He also
mentioned that Dean and Tally had been "hired primarily to work
in developing the Hirten line."  Local Rule 56(a) Statement of
Undisputed Facts of William J. Hirten Co. LLC and James Dean
(Dkt. #20) ("Defendants' SUF"), Exhibit ("Ex.") 1 (Declaration of
Andrea Bonella ("Andrea Decl.")), Ex. C (Email from Panigel to
Bonella of 5/25/2007 (the "Retirement Email")) at 1.

### D.  Subsequent Events

Beginning in June 2007 and throughout the summer, Andrea and
Mario Bonella, another owner of Bonella, had ongoing negotiations
on behalf of Hirten LLC with Panigel about either buying Gerffert
or the merchandise Gerffert had acquired for Hirten New York.
Defendants' Corr. SUF ¶ 23; M&O Re Defendants' SUF at 11
(deeming Defendants' Corr. SUF ¶ 23 admitted).  Hirten LLC was
registered with the State of Delaware on August 10, 2007.
Defendants' Corr. SUF ¶ 22.

In September 2007, Panigel met with Bonella in Milan, Italy,
to negotiate a deal where Bonella would buy much of the
merchandise that Gerffert had bought for Hirten New York over the
years and to discuss the possible sale of Gerffert to Bonella.
Defendants' Corr. SUF ¶ 24; M&O Re Defendants' SUF at 11 (deeming
Defendants' Corr. SUF ¶ 24 admitted).  Panigel signed two letters
of intent while in Milan dated September 26, 2007.  Defendants'
Corr. SUF ¶ 25; M&O Re Defendants' SUF at 11 (deeming Defendants'

Corr. SUF ¶ 25 admitted).  The first stated that Bonella and
Hirten LLC would purchase unsold inventory Gerffert had acquired
for Hirten New York.  Id.  The second letter of intent
contemplated that Bonella would purchase the assets of Gerffert.
Defendants' Corr. SUF ¶ 26; M&O Re Defendants' SUF at 11 (deeming
Defendants' Corr. SUF ¶ 26 admitted).  It contained provisions
for payment to Gerffert or Panigel of a percentage of gross sales
of certain Gerffert merchandise and that Panigel would receive
20% of the gross profits in future fundraising business for the
rest of his life.  Id.  Andrea told Panigel that if Bonella
purchased the Gerffert assets, Bonella would transfer them to
Hirten LLC.  Defendants' Corr. SUF ¶ 27; M&O Re Defendants' SUF
at 11 (deeming Defendants' Corr. SUF ¶ 27 admitted).  In December
2007, Bonella and Gerffert executed a Merchandise Acquisition
Agreement, which provided for payment for the merchandise
Gerffert had purchased for Hirten New York.  Defendants' Corr.
SUF ¶ 28; M&O Re Defendants' SUF at 11 (deeming Defendants' Corr.
SUF ¶ 28 admitted).  Bonella then transferred the merchandise it
bought from Gerffert to Hirten LLC.  Id.

   After Panigel sent the Retirement Email to Bonella on May
25, 2007, he told Dean and Tally that he was retiring.
Defendants' Corr. SUF ¶ 31; M&O Re Defendants' SUF at 11 (deeming
Defendants' Corr. SUF ¶ 31 admitted in part); see also Panigel
Reply Decl. at 30 n.22 ("Clearly it was necessary that I tell

Dean and Tally after I sent my May 25, 2007 email to the
Bonellas. The email would not have been very convincing if I
hadn't."). During the summer of 2007, Panigel was aware that
Tally was supervising the move of the inventory and equipment of
Hirten New York in Brooklyn to Hirten LLC in Rhode Island, and
Panigel allowed him to do so. Defendants' Corr. SUF ¶ 34; M&O Re
Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 34
admitted); see also Panigel Reply Decl. ¶ 66 ("I knew that Tally
and Dean were attending to Hirten's move, and since I still had
hopes that Gerffert would be purchased by Fratelli Bonella, I did
not prevent it.").

Throughout his employment at Gerffert, Panigel directed Dean
to work on developing new products for the Hirten New York line,
which Dean did. Defendants' Corr. SUF ¶ 35; M&O Re Defendants'
SUF at 12 (deeming Defendants' Corr. SUF ¶ 35 admitted). Even
after May 2007, Panigel directed Dean to work on developing new
products for Hirten LLC including a series of books and
biographies of the Saints, holy cards, a rosary folder, and
rosary beads. Defendants' Corr. SUF ¶ 36; M&O Re Defendants' SUF
at 12 (deeming Defendants' Corr. SUF ¶ 36 admitted). Panigel
told Andrea that he had Dean marketing Hirten merchandise in the
summer of 2007 to insure Hirten LLC's success and maximize the
value of Gerffert's Hirten New York merchandise. Id.

Gerffert paid for Dean and Tally to attend trade shows in

August and September 2007.  Defendants' Corr. SUF ¶ 37; M&O Re
Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 37
admitted in part).  The business cards used by Dean and Tally
were paid for by Gerffert and bore the name Gerffert/Hirten/HMH.
Defendants' Corr. SUF ¶ 38; M&O Re Defendants' SUF at 12 (deeming
Defendants' Corr. SUF ¶ 38 admitted in part).  Panigel was aware
of this and did not object to it.  Id.  Even in November 2007,
Panigel was confirming with Bonella that orders should be shipped
to the "New Hirten."  Defendants' Corr. SUF ¶ 39; see also M&O Re
Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 39
admitted).

### E.  The Works of Art

In 2006, Gerffert purchased a non-exclusive license to use
nineteen works of art ("Original Works") created by artist Larry
Ruppert ("Ruppert") for use in a communion book, The Little Child
of God.  Defendants' Corr. SUF ¶ 40; see also First Amended
Complaint for Copyright Infringement (Dkt. #16) ("Amended
Complaint") ¶ 10.  In July 2007, Dean commissioned Ruppert to
make modifications to the Original Works ("Modified Works") for
use in a communion book.  Defendants' Corr. SUF ¶ 41; M&O Re
Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 41
admitted).  Dean explained to Ruppert that the Modified Works
were being commissioned on behalf of a new Hirten entity that was
being formed.  Defendants' Corr. SUF ¶ 42; M&O Re Defendants' SUF

10

at 12 (deeming Defendants' Corr. SUF ¶ 42 admitted). He also
explained that the President of Gerffert, Panigel, was retiring
and planning to sell Gerffert's assets to the new entity to be
formed. Id. Dean paid Ruppert $4,240 in consideration for the
Modified Works, which was invoiced to HMH since the formation of
a new Hirten entity was not yet complete. Defendants' Corr. SUF
¶ 43; M&O Re Defendants' SUF at 12 (noting that Plaintiff did not
dispute Defendants' Corr. SUF ¶ 43). After Hirten LLC was
created, it approved this transaction with Ruppert and issued a
credit for the payment. Defendants' Corr. SUF ¶ 44; M&O Re
Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 44
admitted).

On June 22, 2009, Ruppert assigned, in writing, all his
interest in the Original Works to Gerffert, including the
copyrights. See Amended Complaint, Ex. 2 (Assignment of
Copyright). On March 3, 2010, Gerffert sent a letter to Hirten
LLC, stating that Gerffert was terminating whatever license
Hirten LLC may have in the Original Works. See Panigel Reply
Decl., Ex. L (Letter from Kaufman to Shortell of 3/3/10).

    **F.  The Present Action**

In the present action, Gerffert alleges that Defendants are
currently offering for sale and selling a new First Communion
Book entitled Child of God which contains the Modified Works of

art and that such sales infringe Gerffert's copyrights.[3]  Amended
Complaint ¶ 19.  Gerffert additionally alleges that Dean breached
a fiduciary duty and duty of loyalty to Gerffert when he
approached Ruppert in July 2007 and requested that Ruppert
produce the Modified Works.  Id. ¶ 77.  Gerffert also alleges
that Dean breached his fiduciary duty and duty of loyalty to
Gerffert by interfering with negotiations between Gerffert and
Hirten New York and its officers.  Id. ¶ 80.

## II.  Summary Judgment Standard

"Summary judgment is appropriate if 'the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law.'"  Commercial Union
Ins. Co. v. Pesante, 459 F.3d 34, 37 (1st Cir. 2006)(quoting Fed.
R. Civ. P. 56(c)); accord Kearney v. Town of Wareham, 316 F.3d
18, 21 (1st Cir. 2002).  "A dispute is genuine if the evidence
about the fact is such that a reasonable jury could resolve the
point in the favor of the non-moving party.  A fact is material
if it carries with it the potential to affect the outcome of the

---

[3] In the Amended Complaint, Plaintiff refers to the Modified
Works as the "Infringing Work."  Amended Complaint ¶ 19; see also id.
¶ 20 ("The Infringing Work contains and displays images which are
copies of, or are substantially similar to, the [Original Works] of
which Plaintiff is the copyright owner, thus infringing Plaintiff's
copyright.").

suit under the applicable law." Santiago-Ramos v. Centennial
P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000)(quoting
Sánchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996)).

In ruling on a motion for summary judgment, the court must
examine the record evidence "in the light most favorable to, and
drawing all reasonable inferences in favor of, the nonmoving
party." Feliciano de la Cruz v. El Conquistador Resort & Country
Club, 218 F.3d 1, 5 (1st Cir. 2000)(citing Mulero-Rodriquez v.
Ponte, Inc., 98 F.3d 670, 672 (1st Cir. 1996)). The non-moving
party may not rest merely upon the allegations or denials in its
pleading, but must set forth specific facts showing that a
genuine issue of material fact exists as to each issue upon which
it would bear the ultimate burden of proof at trial. See
Santiago-Ramos v. Centennial P.R. Wireless Corp., 217 F.3d at 53
(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106
S.Ct. 2505 (1986)). "[T]o defeat a properly supported motion for
summary judgment, the nonmoving party must establish a trial-
worthy issue by presenting enough competent evidence to enable a
finding favorable to the nonmoving party." ATC Realty, LLC v.
Town of Kingston, 303 F.3d 91, 94 (1st Cir. 2002)(quoting LeBlanc
v. Great Am. Ins. Co., 6 F.3d 836, 842 (1st Cir. 1993))
(alteration in original)(internal quotation marks omitted).

"[W]hen the facts support plausible but conflicting
inferences on a pivotal issue in the case, the judge may not

13

choose between those inferences at the summary judgment stage."

Coyne v. Taber Partners I, 53 F.3d 454, 460 (1st Cir. 1995).

Furthermore, "[s]ummary judgment is not appropriate merely

because the facts offered by the moving party seem more

plausible, or because the opponent is unlikely to prevail at

trial.  If the evidence presented is subject to conflicting

interpretations, or reasonable men might differ as to its

significance, summary judgment is improper."  Gannon v.

Narragansett Elec. Co., 777 F. Supp. 167, 169 (D.R.I. 1991)

(citation and internal quotation marks omitted).

## III. Discussion

### A. Copyright Infringement Claims[4]

Defendants seek summary judgment on the copyright

infringement claims on the basis that New Hirten has a

nonexclusive right to use the Modified Works.  See Corrected

Memorandum of Law in Support of Motion for Summary Judgment of

William J. Hirten Co., LLC and James Dean (Dkt. #27)

("Defendants' Mem.") at 10-13.  Defendants rely upon the

following facts.  In 2006, Gerffert purchased a non-exclusive

license from Ruppert to use the Original Works.  Defendants'

Corr. SUF ¶ 40; see also id., Ex. 4 (Declaration of Larry Ruppert

("Ruppert Decl.")) ¶ 1.  In July 2007, Dean commissioned Ruppert

---

[4] These claims are contained in Counts 1-4 of the Amended
Complaint.  See Amended Complaint ¶¶ 39-74.

14

to make modifications to the Original Works for use in a communion book. See M&O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶ 41 admitted). Dean explained to Ruppert that these Modified Works were being commissioned on behalf of a new Hirten entity that was being formed. See id. (deeming Defendants' Corr. SUF ¶ 42 admitted). Ruppert created the Modified Works, provided them to New Hirten for use in a communion book, and was paid $4,240 in consideration. See id. (deeming Defendants' SUF ¶¶ 41-43 admitted); see also Ruppert Decl. ¶¶ 2-3. Thus, Defendants contend that "at minimum, Ruppert granted Hirten LLC a nonexclusive license to use the [M]odified [W]orks in a communion book to be sold by Hirten LLC." Defendants' Mem. at 12. The Court agrees.

As the Seventh Circuit has explained:

> [T]he existence of a license, exclusive or nonexclusive, creates an affirmative defense to a claim of copyright infringement. Effects [Assocs. v. Cohen], 908 F.2d [555] at 559 [(9th Cir. 1990)]. The concept of an implied nonexclusive license has been recognized not only by Nimmer, a preeminent treatise on copyright law,[5] but also by the courts, including this one, which universally have recognized that a nonexclusive license may be implied from conduct. Indeed, implied licenses are like implied contracts .... [T]he Ninth Circuit, in Effects, held that an implied nonexclusive license has been granted when (1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work.

---

[5] Melville B. Nimmer & David Nimmer, 3 Nimmer on Copyright (1995).

<u>Effects</u>, 908 F.2d at 558-59.

<u>I.A.E., Inc. v. Shaver</u>, 74 F.3d 768, 775-76 (7th Cir. 1996)
(footnotes omitted); <u>accord</u> <u>Asset Mktg. Sys., Inc. v. Gagnon</u>, 542
F.3d 748, 754-55 (9th Cir. 2008); <u>see also</u> <u>Lulirama Ltd., Inc. v.</u>
<u>Axcess Broadcast Servs., Inc.</u>, 128 F.3d 872, 881 (5th Cir. 1997)
("The owner of a copyright is free to grant multiple licenses for
different uses of the same material.").

Gerffert makes several arguments, some of which overlap, in
support of its contention that Defendants have no license to use
the Modified Works.  <u>See</u> Response in Opposition to Defendants'
Motion for Summary Judgment (Dkt. #30) ("Plaintiff's Response")
at 8-16.  None are persuasive.

### 1.  **Alleged Fraudulent Representation**

Gerffert asserts that Dean breached a fiduciary duty and
duty of loyalty to Gerffert when he approached Ruppert in July
2007 and "fraudulently represent[ed] ... that he was, or would be
soon, Plaintiff's new owner and ... commission[ed] Mr. Ruppert to
create the [Modified Works] to use for his own benefit."
Plaintiff's Response at 9.  Therefore, Gerffert argues that any
license should be held in constructive trust for Gerffert, <u>see</u>
<u>id.</u> at 9-10, or that the license should be rescinded because of
fraud, <u>see</u> <u>id.</u> at 10.  However, the evidence which Gerffert cites
to support its claim that Dean made such a representation is
Panigel's account of a telephone conversation which he allegedly

had with Ruppert, see id. at 10; see also Panigel's Reply Decl. ¶
57. Such evidence is hearsay and not admissible. See Hlinka v.
Bethlehem Steel Corp., 863 F.2d 279, 282-83 (3rd Cir. 1988)
(refusing to consider plaintiff's affidavit in deciding
defendants' motion for summary judgment where "many of the
statements within the affidavit were hearsay and would be
inadmissible unless they qualify as hearsay exceptions"); Sellers
v. M.C. Crafters, Inc., 842 F.2d 639, 643 (2nd Cir. 1988)("Rule
56 requires a motion for summary judgment to be supported with
affidavits based on personal knowledge, and a hearsay affidavit
is not a substitute for ... personal knowledge.")(internal
citation omitted). Thus, Panigel's Reply Decl. fails to
establish a factual dispute regarding what Dean told Ruppert when
he approached him in July 2007. See Medina-Munoz v. R.J.
Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)("We have
interpreted Rule 56 to mean that [t]he evidence illustrating the
factual controversy cannot be conjectural or problematic; it must
have substance in the sense that it limns differing versions of
the truth which a factfinder must resolve.")(alteration in
original)(internal quotation marks omitted); see also Slowiak v.
Land O'Lakes, Inc., 987 F.2d 1293, 1295 (7th Cir. 1993)("Self-
serving affidavits without factual support in the record will not
defeat a motion for summary judgment.").

    Accordingly, Gerffert's arguments for imposition of a

construction trust or for recission of the license based on fraud lack factual support.  Therefore, they are rejected.

### 2.  **Holder of the License**

Gerffert next argues that the license of the Modified Works does not belong to Hirten LLC for two reasons.  First, it contends that since HMH issued the check to Ruppert, it was HMH which received the license.  <u>See</u> Opposition at 11.  However, this argument completely ignores Ruppert's declaration which states that Dean commissioned him to make modifications to the art work for a new Hirten company which was in the process of being formed and that he created the new art work for the new Hirten company. Ruppert Decl. ¶¶ 2-3.  Indeed, the declarations of both Dean and Ruppert demonstrate that Dean told Ruppert and Ruppert understood that Dean was acting on behalf of New Hirten, not HMH.  <u>See</u> Second Dean Decl. ¶ 23; Ruppert Decl. ¶ 2; <u>see also</u> M&O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF ¶¶ 42-43 admitted).  Gerffert's contention that the license was somehow granted to HMH when the two individuals involved in the transaction state that the intended recipient was New Hirten is unpersuasive.

Gerffert also asserts, without any factual basis, that there is no evidence that Dean was acting as a promoter for Hirten LLC. <u>See</u> Plaintiff's Response at 10-12.  "A corporate promoter is one who, alone or with others, participates in the formation of a

corporation or some other joint business venture, and takes steps
to put it in a position to transact the business for which it is
intended." Café La France, Inc. v. Schneider Sec., Inc., 281
F.Supp.2d 361, 373 (D.R.I. 2003). Here Defendants have submitted
uncontradicted evidence that Dean acted as a promoter for Hirten
LLC in his commissioning of Ruppert to create the Modified Works.
See M&O Re Defendants' SUF at 12 (deeming Defendants' Corr. SUF
¶¶ 42-44 admitted).

Gerffert argues that whether an individual is a promoter is
a question of fact, and, therefore, not ripe for a summary
judgment motion. See Plaintiff's Response at 11. However,
Gerffert has failed to properly dispute the facts which establish
that Dean was acting as promoter. See M&O Re Defendants' SUF at
12 (deeming Defendants' Corr. SUF ¶¶ 42-44 admitted); see also
Rees v. Mosaic Techs., Inc., 742 F.2d 765, 768-69 (3rd Cir. 1984)
(explaining that when pre-incorporation activities of a promoter
are ratified by the post-incorporation acts of the corporation,
the act of ratification relates back in time to the original
activities "permitting the acts of the promoter to constitute, in
effect, acts done by the corporation"). Gerffert has also failed
to tender any admissible evidence to show that Dean was not
acting as a promoter for Hirten LLC when he approached Ruppert in
the summer of 2007. See Memorandum and Order Striking in Part
Plaintiff's Statement of Undisputed Facts and Denying Request to

Substitute (Dkt. #54) ("M&O Striking Plaintiff's SUF") at 6; see also Local Rule 56(a)(5) Statement of Disputed Facts of William J. Hirten Co. LLC and James Dean (Dkt. #35) ("Defendants' SDF") at 2.

Evidence from the moving party as to specific facts can be accepted by the court where no contrary evidence is tendered by the party opposing summary judgment. Statchen v. Palmer, 623 F.3d 15, 18 (1st Cir. 2010). That is the case here with respect to the issue of whether Dean was acting as a promoter for Hirten LLC. A genuine issue of material fact "does not spring into being merely because a litigant claims that one exists." United States v. 6 Fox Street, 480 F.3d 38, 42 (1st Cir. 2007)(quoting Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990)). "[T]he nonmoving party must produce 'hard evidence of a material factual dispute' to survive a summary judgment motion," id. (internal citation omitted), and a dispute about a material fact is genuine only if a reasonable jury could resolve it in favor of either party, Lockridge v. Univ. of Maine Sys., 597 F.3d 464, 469 n.3 (1st Cir. 2010). A reasonable jury would be unable to find that Dean was not acting as a promoter when he commissioned Ruppert to produce the Modified Works. Thus, the Court rejects Gerffert's arguments that the license does not belong to Hirten LLC.

### 3. Statute of Frauds

Gerffert makes an unclear argument that the agreement which

Dean and Ruppert made in the summer of 2007 could not be performed in one year because "Dean has affirmed in his declaration that 'It typically takes approximately a year and a half to develop a new communion book.'" Plaintiff's Response at 13 (quoting Third Dean Decl. ¶ 26). Based on this premise, Gerffert asserts that the license could not be performed within one year and is unenforceable because it was not in writing. See id.

Defendants respond that this argument makes no sense. See Reply of William J. Hirten Company, LLC and James Dean in Support of Their Motion for Summary Judgment (Dkt. #42) ("Defendants' Reply") at 6. They note that "[t]he contract [agreed to between Dean and Ruppert] was performed within two months." Id. The Court agrees with Defendants. See M&O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 22, 41-44 admitted). It appears that Gerffert is conflating or confusing how long it took Ruppert to produce the Modified Works with how long it took to put those Modified Works in a new communion book. In any case, the Court finds Gerffert's statute of frauds argument unpersuasive.

### 4. Breach of Fiduciary Duty

Gerffert additionally argues that because Dean was an employee of Gerffert in July 2007 "any actions that Dean took ... as far as commissioning Mr. Ruppert to create the [Modified

Works] were a breach of his fiduciary duty, and he cannot be permitted to acquire any benefit from those actions." Plaintiff's Response at 9. However, Panigel had told Dean in late[6] May 2007 that he was retiring. M&O Re Defendants' SUF at 11 (deeming Defendants' Corr. SUF ¶ 31 admitted to this extent). Panigel now claims that this was only a negotiation tactic, <u>see</u> Panigel Reply Decl. ¶ 30, and suggests that Dean knew (or should have known) that he "did not intend to retire ...," <u>id.</u> at 15 n.11. However, the Court is unpersuaded by the evidence which Gerffert cites that Dean knew during the summer of 2007 that Panigel did not intend to retire. <u>See</u> Email from Kaufman to Martin, M.J., of 8/30/10 (providing record citations which the Court had requested). Indeed, Panigel himself states that as late as mid-November 2007 he "was still negotiating with Fratelli Bonella to buy Gerffert," Panigel Reply Decl. ¶ 35, and that he "expected the purchase of Gerffert to occur in the near future," <u>id.</u> Such negotiation and expectation are consistent with the intention expressed his May 2007 retirement email to either sell Gerffert or liquidate it, <u>see</u> Retirement Email at 2. They are inconsistent with Panigel's claim that "everything," Panigel

_____

[6] The email in which Panigel announced his decision to retire is dated May 25, 2007, and Panigel told Dean that he was retiring after sending it. <u>See</u> Reply Declaration of Stephen Panigel in Further Support of Motion for Preliminary Injunction and in Opposition to Cross-Motion for Summary Judgment (Dkt. #30-1) ("Panigel Reply Decl.") at 30 n.22.

Reply Decl. at 15 n.11, he said and did indicated that he did not intend to retire, at least to the extent he contends that such indication was clear prior to mid-November 2007.

Moreover, from February 2005 through at least mid-November 2007, it was the intention of Gerffert (and its president Panigel) to either purchase ownership of Hirten New York or later sell the assets of Gerffert or significant merchandise which Gerffert had accumulated for the Hirten New York line.  See M&O Re Defendants' SUF at 10-12 (deeming Defendants' Corr. SUF ¶¶ 7-9, 12, 14, 17, 20, 23-26, 29, 31, 34-39 admitted); Panigel Reply Decl. ¶ 35.  As of May 2007, Panigel knew that Dean would be an owner in the soon to be formed Hirten LLC and he continued to employ Dean, see M&O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 29, 36, 39 admitted), who had been "hired primarily to work in developing the Hirten line," Retirement Email at 1.  Panigel also knew that Dean was marketing and developing products on behalf of Hirten LLC and that the success of Hirten LLC would assist Gerffert in recouping its substantial investment in Hirten New York.  See M&O Re Defendants' SUF at 11, 12 (deeming Defendants' Corr. SUF ¶¶ 29, 36, 39 admitted); see also Panigel Reply Decl. ¶ 21 (referring to "all the money that had been spent to build the second floor onto Gerffert's building and to improve Hirten New York's line"); id. ¶ 24 (noting investment of "close to $5 million dollars in the

23

enterprise"); id. ¶ 46 ("I did not want to do anything to impede the possible sale of Gerffert to Fratelli Bonella ...."); id. ¶ 61 ("I clearly did not want to harm [Dean and Tally] or Hirten, or antagonize the Bonellas, because I still had hopes that Fratelli Bonella would buy Gerffert."); id. ¶ 66 ("I knew that Tally and Dean were attending to Hirten's move, and since I still had hopes that Gerffert would be purchased by Fratelli Bonella, I did not prevent it.").

Thus, Dean's actions in developing and marketing products for Hirten LLC in the summer of 2007 were not inconsistent with his fiduciary obligations to Gerffert because such actions were consistent with maximizing Gerffert's return on its investment. Gerffert has failed to come forward with any competent evidence to establish a trial-worthy issue regarding an alleged breach of fiduciary duty which would require the imposition of a constructive trust. See Goldman v. First Nat'l Bank of Boston, 985 F.2d 1113, 1116 (1st Cir. 1993)(stating summary judgment standard); Forasté v. Brown Univ., 248 F.Supp.2d 71, 79 (D.R.I. 2003)(same). Accordingly, Gerffert's argument that Dean breached a fiduciary duty and that a constructive trust should be imposed is rejected.

### 5. Terminability of License

Gerffert argues if any license was granted to Defendants for use of the Modified Works, it is terminable at will because it

had no term length, and Gerffert has now terminated that license. See Plaintiff's Response at 13-15. In making this argument, Gerffert appears to dispute the principle that a nonexclusive license supported by consideration is irrevocable. See id. at 13. The Court, however, finds that the principle is well established in the law. See Lulirama Ltd., Inc. v. Axcess Broadcast Servs., Inc., 128 F.3d 872, 882-83 (5ᵗʰ Cir. 1997) (rejecting plaintiff's argument that it had the ability to terminate a nonexclusive license); see also Asset Mktg. Sys., Inc. v. Gagnon, 542 F.3d 748, 757 (9ᵗʰ Cir. 2008)(holding that "because [plaintiff] paid consideration, this [non-exclusive] license is irrevocable")(citing Lulirama; 3-10 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 10.02[B][5] (2008)).

Gerffert cites several Rhode Island cases in support of its contention that it could terminate the license granted to Defendants, but these cases deal with employment contracts, not licenses.[7] See Plaintiffs' Response at 14-15 (citing, *inter alia*, Hilton v. Fraioli, 763 A.2d 599, 602 (R.I. 2000); Sch. Comm. of Providence v. Bd. of Regents for Educ., 308 A.2d 788,

_____

[7] Gerffert appears to assume that Rhode Island law governs the agreement between New Hirten and Ruppert regarding the Modified Works. See Plaintiffs' Response at 14 ("Since there is no termination date in the alleged license, we look to Rhode Island law."). "Ordinarily, unless a contract provides otherwise, it is governed by the law of the state in which it was formed." Latin Am. Music Co. v. Am. Soc'y of Composers Authors & Publishers, 593 F.3d 95, 99 (1ˢᵗ Cir. 2010). It is not clear from the present record that the contract at issue was formed in Rhode Island, but for purposes of considering this argument the Court accepts Gerffert's assumption.

790 (R.I. 1973)). Thus, they are inapposite. This Court agrees with the Fifth and Ninth Circuits that if the license were terminable, as Gerffert contends, the contractual agreement between Hirten LLC and Ruppert would have been illusory. As the Fifth Circuit explained in Lulirama:

> If Lulirama had the ability to terminate the license at will, then no contract could exist because Lulirama's obligation under the contract would be illusory. See Restatement (Second) of Contracts § 2 cmt. e (1981)("Words of promise which by their terms make performance entirely optional with the 'promisor' whatever may happen, or whatever course of conduct in other respects he may pursue, do not constitute a promise. Although such words are often referred to as forming an illusory promise, they do not fall within the present definition of promise."); Light v. Centel Cellular Co., 883 S.W.2d 642, 645 (Tex. 1994)("When illusory promises are all that support a purported bilateral contract, there is no contract."). A presumption exists that parties to a purported contract did not intend to make illusory promises. See Holguin v. Twin Cities Servs., Inc., 750 S.W.2d 817, 819 (Tex.App.-El Paso 1988, no writ)("[I]t is presumed that when parties make an agreement they intend it to be effectual, not nugatory; and the contract will be construed in favor of mutuality ....").

Lulirama Ltd., Inc., 128 F.3d at 882-83 (alterations in original).

The record in this case provides no indication that Hirten LLC and Ruppert intended that Hirten LLC's right to use the Modified Works was terminable by Ruppert. Based on this and the law from the Fifth and Ninth Circuits discussed above, I find that the non-exclusive license was not terminable. Although Gerffert subsequently acquired all of Ruppert's rights in the

Modified Works, because Ruppert did not have a right to terminate the license Gerffert similarly lacks such right. Accordingly, the Court rejects Gerffert's argument that it has terminated the license.

## B. Breach of Fiduciary Duty Claim[8]

Gerffert's arguments in support of its breach of fiduciary duty claim against Dean, <u>see</u> Plaintiff's Response at 16-17, suffer from the same defects which caused the Court to reject similar arguments made with respect to the copyright infringement claim, <u>see</u> Discussion section III. A. 4. <u>supra</u> at 21-24. Gerffert asserts that Dean "misrepresent[ed] to Mr. Ruppert that he was, or would be soon, Plaintiff's new owner and commissioned Mr. Ruppert to create the [Modified Works] to use for his own benefit."[9] Plaintiff's Response at 16. However, there is no admissible evidence to support this assertion, and it is directly contradicted by the declarations of Dean and Ruppert. Gerffert claims that Dean knew that Panigel was not retiring when Dean approached Ruppert, but the Court has already rejected this claim. <u>See</u> Discussion section III. A. 4. <u>supra</u> at 22-23. In short, Gerffert has failed to come forward with any admissible

---

[8] This claim is contained in Count 5 of the Amended Complaint. <u>See</u> Amended Complaint ¶¶ 75-83.

[9] Gerffert claims, without providing a supporting citation, that "Defendants do not dispute," Plaintiff's Response at 16, that Dean made the alleged misrepresentation, <u>see</u> <u>id.</u> Gerffert's claim is completely baseless, and it is rejected by the Court.

evidence which supports its breach of fiduciary duty claim.[10] Accordingly, Defendants are entitled to summary judgment on this claim also.

## IV.  Summary

In sum, Gerffert has failed to meet its burden of presenting competent evidence to defeat the instant Motion for Summary Judgment.  The record supports Defendants' contention that Ruppert granted Hirten LLC a nonexclusive license to use the Modified Works in a communion book.  Gerffert's arguments for recission or imposition of a constructive trust based on fraud lack evidentiary support.  Similarly, its argument that any license would not be to Hirten LLC ignores the declarations of Dean and Ruppert, the two individuals directly involved in the transaction.  Because Hirten LLC paid consideration for the license, it is not subject to termination by Gerffert.  Lastly, Dean did not breach any fiduciary duty to Gerffert after Panigel told Dean that he was retiring and was going to sell or liquidate the business.

## V.  Conclusion

For the reasons stated above, I recommend that Defedants'

---

[10] Gerffert also alleges in its Amended Complaint that Dean interfered "with negotiations between Plaintiff and Defendant Hirten's predecessor company and its officers," Amended Complaint ¶ 80, but it has offered no evidence to support this allegation.  Accordingly, this allegation does not prevent the granting of the instant Motion for Summary Judgment.

Motion for Summary Judgment be granted.  Any objections to this
Report and Recommendation must be specific and must be filed with
the Clerk of Court within fourteen (14) days of its receipt.  <u>See</u>
Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific
objections in a timely manner constitutes waiver of the right to
review by the district court and of the right to appeal the
district court's decision.  <u>See</u> <u>United States v. Valencia-Copete</u>,
792 F.2d 4, 6 (1st Cir. 1986); <u>Park Motor Mart, Inc. v. Ford</u>
<u>Motor Co.</u>, 616 F.2d 603, 605 (1st Cir. 1980).

<u>/s/ David L. Martin</u>
DAVID L. MARTIN
United States Magistrate Judge
December 20, 2010